Case today is 2016-105 In Re TC Heartland. Mr. Duffy, you may proceed. Thank you, Your Honor. May it please the Court. This case turns on the meaning of six words, except as otherwise provided by law. This language was added by Congress in 2011 as part of a new subsection A in 1391, which provides for the applicability of the entire section of 1391. With this language, the results in this case, with this new language... Mr. Duffy, did you have any other adequate means to obtain the relief you desire? No, I do not think we do. And that is based on the decisions of this Court in prior cases that have granted, that have allowed the use of the mandamus mechanism... In extraordinary circumstances. Why is this extraordinary? Because, as this Court mentioned in the In Re EMC case... So that would be every single venue case, right? So every single venue case can have a written mandamus. Most venue cases, I think, turn on a settled construction of a statute and of the discretion of the district court to, for example... So if we think that this construction is settled by prior authority, then there's no extraordinary question here, right? If this Court thought that there was a settled construction, that would be true. But I must say the language that the V.E. Holdings case relied on has been repealed by Congress. It specifically was tied to a phrase that then existed in 1391C, which was for venue purposes in this chapter, and that language no longer exists in the statute. But that language was just broadened. Instead of saying for this chapter, it says for all venue purposes. So how can that unravel the V.E. Holdings? So there's two points on that. First of all, the entire section begins with a provision that says applicability of this section, and that is standard language of exclusion in that section. The second point about 1391C... Wait, it says for all venue purposes. This is only related... This is not all of 1391C. This is only, among other things, the definition of corporate residence. It's saying residency for all venue purposes, 1, 2, and 3, including the definition of corporate residence. But the entire section in 1391A is only applicable except as otherwise provided by law. And our position is that the plain language of the statute means that the whole of the section has to be qualified by that exceptions clause at the very beginning of 1391. But there's no definition of residence in 1400B. There is a... 1400B has a settled interpretation by this multiple Supreme Court decisions that resides within 1400B. Wait a minute. So do you think except as otherwise provided by law, it applies to common law? I think it does apply to judge-made law. First of all, it is an interpretation of a statute. So I think that except as otherwise provided by law includes the statute. The statute doesn't contain a definition. It's only the Supreme Court decision which does. Please definitely let me finish. And so except as otherwise provided by law would be the Supreme Court's decision. But here's the problem. When this was enacted in 2011, that wasn't the law. V.E. Holding, whether right or wrong, changed the state of the law. So when Congress enacted except as otherwise provided by law language, it was not operating under the assumption of the existence of that legal standard you're relying on from pre-V.E. Holding. Well, with that, the question then becomes a twofold question. The first question is whether law encompasses case law. And the second question is whether V.E. Holdings is the relevant case law and whether it can be a settled decision. I would direct the courts' attention to a case like the Supreme Court case from the 19th century, a patent case, in which it says a question regarding the construction of a statute in the United States concerning patents for inventions cannot be regarded as judicially settled when it has not been so settled by the highest judicial authority which can pass upon the question. And there are two levels of review. But the Supreme Court refused certiorari in V.E. Holding. And refusals of certiorari have no precedential weight because there are hundreds of even up to all sorts of reasons. But your argument was by the highest court. And since they refused certiorari, we were the highest. It has to be settled by the highest court, according to the Supreme Court. And merely a denial of certiorari is not a settling of a question. It's merely the denying of a discretionary writ. And there are two levels. Obviously, the court could have en banced V.E. Holdings and it could have also been gone to the Supreme Court. There was also a limitation. Just to be clear, except as otherwise provided by law, applies to, in your view, this is what you have to get in order to prevail, at least in front of the panel, applies to case law and only applies to case law of the Supreme Court. But the problem is in V.E. Holding, we came along and said the change in the statute from to V.E. Holding changed the interpretation that ought to be given and the outcome. And the Supreme Court's never spoken on that. So where is the Supreme Court case that is the except as otherwise provided by law thing for you? Well, first, let me say that the Supreme Court— It's getting quite attenuated for me, Mr. Duffy. I don't think it's that attenuated because the Congress repealed the specific language that V.E. They broadened it. They didn't narrow it. They say they repealed it. That's actually—it just feels like it's a misrepresentation, nothing personal. I don't mean that to sound as harsh as it came out because they took away for purposes of this chapter and replaced it with for all purposes. So it's hard to say that that was a repeal in the form of a purposeful, intentional conveyance of narrowing. Well, as the magistrate said, if anything, the 2011 amendments to this portion of section 1391C served to further broaden the applicability of the statute. Prior to 1988 and prior to V.E. Holdings, the language in the statute was for venue purposes, which was general and applied outside the chapter. That was the language that the Supreme Court and it didn't have the word all in there, but it was not limited to this chapter. The Supreme Court said in that case that the general would not control the specific in that case. And the whole reasoning of V.E. Holdings was the narrowness of the language that they targeted this chapter and that the change in language from for venue purposes to for purposes of venue in this chapter, which I must say is we do have and we want to preserve that V.E. That's not for this panel. But that language was specifically repealed and it's the generality of the language that returns things to the status quo ante. But now we've gone one step further and Congress now said not just for venue purposes, for all venue purposes. So clearly all does not mean and my colleagues on the other side concede on page 11 of their brief that if there's a definition elsewhere in the United States Code, then the specific controls over the general. There's also 1391D. 1391D provides a different definition where there are multiple districts in a state. And those two definitions, you can read them and they're not exceptions. There's no language of exception in 1391D. But district courts, and in fact, I happen to have a district court opinion here from the Northern District of Illinois just decided a few months ago called Marshall versus Alpha and Omega Transit. The district court here says, well, of course, 1391D controls over 1391C. And if you don't take that exception, if you don't have that implicit exception that all doesn't mean all, that it's subject to implied to the traditional rule that a specific controls over the general, then 1391D has no meaning. And that's very similar to the situation we have here with 1400B because 1400B has almost no meaning. And indeed, V.E. Holdings even said, it was a little strange, V.E. Holdings said that the entirety of 1400B really doesn't have any effect, or at least the second clause in 1400B has no effect for patent defendants who are corporations. I'm just going to ask you to slow down a little bit. You're talking faster than I can listen. And I want to go back to what you said because I didn't understand it. 1391D, what is it you'd like me to take from 1391D? 1391D must qualify 1391C2 because C2 says that a defendant is a resident under this, for all venue purposes, apparently, if the court has personal jurisdiction over the defendant. D says that in a state with more than one judicial district, there's a different analysis that turns on the minimum context to that district. Where does it say that? In D, 1391. Why don't you read me the portion that you think? Yes, okay. In 1391D, it says, for purposes of venue under this chapter, in a state which has more than one judicial district and in which a defendant that is a corporation is subject to the personal jurisdiction at the time the action is commenced. So that means that that would be under C, it would be resident of that state. Such corporation shall be deemed to reside in any district in that state within which its context would be sufficient to subject it to personal jurisdiction if that district were a separate state. So now if you apply that definition, a corporation that is, for example, has all kinds of contacts with the Southern District of New York, but has no contacts with the Western District of New York, that corporation would not be subject to venue in the Western District of New York, even though if you applied the definition in 1391C2, it would be subject to jurisdiction in the Western District of New York, because the test under C2 is only if a defendant in any judicial district in which such defendant is subject to the court's personal jurisdiction. There still would be personal jurisdiction over such a defendant, because the personal jurisdiction would be determined by Federal Rule of Civil Procedure 4K1, and that would be the state, New York state's, long-arm statute, and obviously a New York statute can reach the Southern District of New York. The state long-arm statute doesn't make any distinction. I know you're trying hard, and don't worry, I'm going to restore your rebuttal time, but I guess I'm still not following whatever argument it is you want me to take away from D, so if it's important, you better try and say it again, because the only thing I understand about D is that D just tries to explain what you do when you have more than one judicial district in a state, and how you should choose in which judicial district there is corporate residence, and that's all I understand D to be. It is just a narrowing, kind of, of C2, or a distinction in jurisdictions where states have more than one judicial district, and therefore it slightly alters the analysis. It does. I don't know what else you want me to take from it. I would like you to take from it that literally read, C2 would establish jurisdiction in districts that D says there's no, pardon me, would establish venue in districts where D says there's no venue. But why is that a problem? You have C2 being slightly more general, and then D says we're going to get more specific in areas where there's more than one district. I agree. I agree. The specific controls the general, and that is exactly what I think the same principle should apply to 1400B. But there's no definition. If there were a we wouldn't be here. This wouldn't be a problem. So I do think that that goes to the question of whether case law is law. And on that point, I think it's relatively clear that the Supreme Court has said over and over again that case law should be considered law for purposes of statutory interpretation. That is a point that has been made over and over again. So for example, a good quote is But, but, but you, you, okay, let's just set that aside for a second. So there have been, by my count, I think, five bills introduced in the last decade in Congress. And I mean, by bill, I mean, a Senate and House version I'm treating as two bills, because technically, if they're not passed, they are two bills. So I'm treating these as two bills. So a total of as best as I can tell, that have been introduced in the last decade in Congress, that were earmarked to correct what you think is wrong with the current state of venue post VE holding. So why isn't the fact that Congress keeps introducing these bills, and in each instance, I have no doubt in my mind what you think of legislative history, but in each instance, nonetheless, these bills are generally accompanied by a report from the committee. And in each of these reports, it expressly talks about VE holding and the need for including the two most recent bills, which no doubt you're aware of the House and the Senate bills in 2015, and the need for Congress to amend 1391 C in particular. So why isn't that pretty strong evidence that even Congress doesn't believe the argument that you're making in front of us today? So I think, first of all, obviously, this is post enactment legislative history, to the extent you're talking about bills that are after 2011. No, because there's 2007 bills. Well, those are actually even worse, because you could say that, well, at the time, the statute existed, not in the way that it exists today. VE holdings then would still be the interpretation of this court of the statute that exists. But that statute no longer exists. But there's both. So I mean, it's even worse. There's 2007 bills, and there's 2015 bills. So you're bookended. I mean, the argument has to break down on one end. You can't have both. Mr. Duffy, you cannot have both ends of the spectrum. You've got to choose a side. Well, I think that with legislative history, the Supreme Court in recent cases has said very clearly in cases like Alexander v. Sandoval, that congressional inaction is to be given very little weight in the interpretive process. So with respect to the post-2011 statutes, I would say you give them very little weight in the interpretive process. I'd also say that this is not uncommon for this court and the Supreme Court to have issues before it that are also pending on Capitol Hill. That happened with the injunctions in Ebay v. Merck Exchange. The respondent's brief in Ebay v. Merck Exchange talked about bills that were pending then on Capitol Hill. Yes, but the difference is you're asking us to conclude that in 2011, when they enacted the language, except as otherwise provided by law, that they were clearly contemplating this exact scenario. And all this legislative history suggests that's not the case because they keep contemplating changes directly to 1391C. So it would seem strange if they think they fixed it all in 1400, that nowhere in all of this would they have acknowledged that. And instead, everybody would be talking about this screwed up V.E. holding decision. I mean, gosh, read the 2015 report. It's pretty castigating of the V.E. holding decision, which is kind of surprising to me. It's kind of like you make a mess in your bedroom and blame it on your sibling. And so anyway, I think I'll end with that. Do you have anything further you'd like to add? I will just say, and I see my red light is on. I will just say that my best case on this is V.E. holdings. Because V.E. holdings itself said that there needed to be no legislative history and no legislative intent and no clear legislative intent or any reports or any indication that the Congress intended to change at least four Supreme Court holdings as to the meaning of 1400B. So that I think is one of the strongest cases of the plain meaning approach. Thank you very much. Before you sit down, I have one question. In your reply brief, I think you've carried your conclusion and you said where a statute such as 1400B has been interpreted as being, quote, the sole and exclusive provision controlling venue, close quote, in a particular class of actions, quoting Forco, then the entirety of 1391 is inapplicable. Now, where does that leave patent infringement with respect to the venue for foreign defendants covered in 1391C3? That's right. It's 3C now. Well, obviously, the Supreme Court decided that in the Brunette case and specifically held that Brunette and the foreign defendants were different. So I would say that in that case, we would apply that. So maybe if there is an overstatement, I apologize for it. But I think that the Supreme Court has spoken quite clearly with respect to your co-equal triplet sibling, although the smallest and weakest of the three. I'm not sure I understand that, nor do I endorse it. Good afternoon, Your Honors. May it please the Court, John Lucan for the respondent. From this side of the podium, this branch of government does not seem particularly small and weak, but I would charge forward anyway. Your Honors, I'd like to start with where this dispute belongs and sort of echo back on a couple of comments that each of you were making. If one reads the policy reasons that echo throughout not only the amicus briefs, but the petitioner's brief as well, this is a dispute about policy. And it's a dispute about the Eastern District of Texas. And it's coming out of a case that is in the District of Delaware, which is my client's state of incorporation. So starting with, is this even remotely appropriate for mandamus? The answer is no. If those policy reasons and the abuses or whatever the amicus or other commentators feel is going on in the Eastern District of Texas is enough to lead this Court to reconsider its clearly settled precedent, as opposed to letting Congress deal with the situation from a policy point of view, it ought to at least come up in a case in which someone in the Eastern District of Texas is actually being put out by whatever is going on down there. In fact, in this case, throughout the petition, you- Someone who has sued your client down there. It would be, well, preferably, I guess, from a personal point of view. But no, Your Honor. I mean, it's, it is, if one will read the petition or the amicus briefs in vain to try to find any injury or any reason that the plaintiff, that the petitioner's been irreparably harmed. In fact, it's ironic enough, this is a weird case in that- This case is not over. No, but it could have been stayed. All three of the asserted patents are the subject of IPRs that are now ongoing in the PTAB. And in a weird turn of events, we, the plaintiff, are the ones who suggested to the Court below that this case be stayed pending the patent PTO taking action on those. And the petitioner, who apparently in front of this Court is convinced that it's suffering irreparable harm by litigating in Delaware, opposed and said full speed ahead. So earlier this week, the District Court judge issued a Markman ruling that, frankly, if anybody's being irreparably harmed by being in Delaware in this case, in this forum, it certainly could have saved the District Court a lot of effort in litigating the case. So I think any suggestion that there's any kind of irreparable harm to the petitioner is completely without merit. And secondly, to the extent that what's going on in Texas or anywhere else, but Texas is obviously the thrust of the amicus briefs and a lot of the rhetoric, and I think accounts for the ample attendance this afternoon, there ought to at least be facts before the Court that establish something going on there has affected somebody in the case. And the normal considerations, both jurisdiction and venue, about the plaintiff's choice and the interest of the host forum, we are not like many of the decried plaintiffs going to other venues because we are in our state of incorporation, which gives Delaware a much greater interest over this case than in all the other hypothetical cases that might have come before this Court. And Your Honor, as you pointed out, Congress has been looking at this throughout this entire time period. I mean, to the extent, and I'm inclined to agree, that when someone in the congressional record, or I think you were talking about Representative Goodlatte with the manager's amendment in June of last year, decries that V.E. Holdings was wrong. Did you say V.E. Moore? I gave the decision to you, Judge. It must have been... V.E. Moore was wrong? The suggestion that V.E. Holdings was wrong, I think, is actually an indication that V.E. Holdings did exactly what the language that Congress adopted in 1988 compelled. And the current Congress, looking back on it, thinks that maybe some changes might be made because they didn't really ask you, is consolidation, because certainly it's true in Delaware as well, but certainly not to the extent that it's true in E.D. Texas, but is consolidation in a narrower number of districts for sure a bad thing? I don't... From a policy perspective. I think from a policy perspective, the answer is not necessarily. Hasn't, in fact, Congress considered an enormous number of different measures and held hearings on the need for specialized trial courts in patent cases. And in each of these cases, it was always judged by, in terms of specialization, it wasn't putting district court judges up with technical backgrounds, but rather just consolidating a large number of cases to give individual judges greater exposure to patent cases. And hasn't that de facto been what this venue statute ended up being? Well, we got one. I would agree with that, and particularly in the context of this case, Your Honor. When one reads the amicus briefs and hears all of the horrible intentions attributed to plaintiffs for going to Texas, Delaware is an excellent example of some, I don't know, you want to call it scale economies or whatever, in the bench. That is a deep bench in patent law. And I don't think it's unfair to the district court judges elsewhere in the country to say that for a court that does not get a lot of patent cases, a patent case is an incredible burden, both in the amount of time that one has to put in on it just because of its bulk. Frankly, the tendency of patent litigators to fight over every single issue instead of cooperating. But also just the body of law is so substantial that the burden on the court and the court's clerks to be able to keep up with the issues is tremendous. And I think that there are some advantages in courts like Delaware having a critical mass, if you will, of patent cases. The other thing, Your Honor, that's- And they have specialized law clerks. Many of those judges I know hire technically trained individuals to be their law clerks because of the heavy patent docket that they hold. That's exactly true. So that's, this all, I'm not saying this is right or this is wrong, that either of these systems are the one that I think we ought to adopt. But boy, doesn't this feel like something the legislature should do rather than something we should be asked to do? Exactly. And to build on that, Your Honor, the other point is that the legislature has so many different options available. And if one traces throughout the time period before the 2011 Act and since then and looks at the variety of options, they stray from staying still somewhat broad to getting incredibly narrow to carving out special categories for certain kinds of plaintiffs. So it might be a more restrictive defendant-centric system. But universities, small inventors, you know, the provisions that say would allow for them in the plaintiff's home if that's where the invention was made or that's where the plant that actually makes the product that embodies the invention is made, the ways of dealing with the problems tempered by the fact that some of the problems are not problems, they are benefits, that is available to Congress is far bigger. So my starting point, which has taken up a fair amount of my time, is simply that this is best left to Congress. And even if this Court were inclined to weight in on this situation via mandamus, it should wait for a case where someone has actually suffered some injury that you could factor into the decision as opposed to someone who, over our objection or our request, is still litigating in Delaware when Delaware could have been stopped, at least pending what the PTO was going to consider. As to the merits, Your Honor, as to the structure of the 2011 statute and what Congress was saying, there are a couple of points that I wanted to make and then answer any questions the Court has. But the legislative history, both in the House report and in the ALI 2004 report, and the ALI pretty much wrote most of what showed up in the statute seven years later. That 2004 report, which is cited at page 8 of the petition, is virtually as authoritative as the legislative history because it basically sets out what was adopted years later after much consideration. The legislative history in the House report for the introductory clause to 1391A that Petitioner relies upon about other law states that new 1390A1 follows current law, as in under the VE regimen, not pre-VE, and it would not, quote, displace the special venue rules that govern under a particular federal statute. And then it cites the ALI study recognizing that there's over 200 specialized statutes. In fact, the ALI would like to get rid of many of them. But Congress, in adopting C, particularly with the four all-venue purposes, is not displacing any of those 200-plus special venue statutes. It is providing a definition to replace a definition that was previously there. Now, what about Mr. Duffy's argument, though, that except as otherwise provided by law includes Supreme Court case law? The Supreme Court did not write in the Supreme Court's intent as to what the definition of reside is. The Supreme It basically said that in 48, they used reside as a synonym for inhabit, so they went back to the original Judiciary Act, and we're looking at what Congress did in 1787, I think. But it wasn't the Supreme Court determining anything. It was the Supreme Court interpreting what an earlier Congress meant. And there's absolutely nothing cited in the petition or anywhere else that a Congress in 1988 or 2011 is not allowed to substitute its judgment for what a word should mean. The word reside is in 1400B, and it has not been displaced. We contend venue is proper here under 1400B, not under the general venue statute that's now in 1391B. It's under 1400B. But as of 2011, what reside means in 1400B is what the 2011 Congress said, substituting its judgment. So it's almost like a claim construction. The claim stays the same. The claim is what's at issue. But Congress in 2011 is allowed to become its own lexicographer, if you will. It's allowed to replace what in 1948 or 19... Okay, I'm not positive I understand exactly your argument, so let me give you a hypothetical because maybe this will help me understand. Because Mr. Duffy says, and I don't think he's wrong about this, that except as otherwise provided by law could possibly indicate clear Supreme Court law on a point. So forget V.E. Holden, okay? Let's suppose the only law on point is something like Forco, and what Forco says... This is my hypothetical world. Don't dispute the facts with me. What Forco says is the word resides in 1400, which has not changed in all this time. Not 1400 and the use of the word resides. Resides in 1400, a patent special venue statute means state of incorporation or principal place of business only, full stop. And Forco is the only law of record, okay? And now suppose you were actually up here trying to tell us to look at the statute and figure out what except is otherwise provided by lawmen, and you're trying to tell us that this actually means that the 1391C definition of residence has displaced that Supreme Court precedent. Is that what you would tell me, or would you acquiesce Mr. Duffy's point that except is otherwise provided by law could indicate a consistent, long-term Supreme Court position on a point? The except is otherwise provided by law, even in that hypothetical, would still not lock the 2011 Congress, assuming hypothetically there was no 1988 Congress and no V.E. Holden, would not prevent the 2011 Congress from not displacing the statute. But they have changed the meaning of it by changing the definition of reside, and they have simply selected the vehicle of doing that in 1991 instead of in 1400B. And the legislative history is abundantly clear why they did it there, because there's 200 other statutes that are out there, many of which use the word reside. I mean, the ALI is saying get rid of We will change them all at once. Rooting them out individually would be very difficult, and that legislative process might be quite difficult because everyone has a constituency. Well, they were also concerned about missing something. Yes, yes, especially when many of the venue statutes use the word jurisdiction, so at times it can be very confusing as to whether it's even a venue statute or not. But all that's happening is that Congress in 2011 is saying I am not displacing that statute, I am changing the definition, and Congress is allowed to change the definition, and there's nothing about otherwise provided by law that keeps Congress from changing the definition. So wait, are you saying that if there were in the patent venue statute an express and specific definition of residence that differed from 1391C, that 1391C should nonetheless be What we're talking about are statutes where Congress, when it adopted them, simply said reside and did not explain in statutory language what it meant. In those situations, and I submit it's not just the Supreme Court, a court enforcing that statute has to figure out what Congress meant by reside, not what reside ought to mean. That's what the Supreme Court did in Forco. It said what did the 1948 Congress mean? The 2000 amendments, even if there was no VE holding in between, is simply Congress in 2011 saying I can leave 1400B in force along with all the other ones, but I as Congress can change the definition of what reside means, and that's exactly what they did. Thank you. Thank you. Mr. Duffy, we'll restore your rebuttal time. Thank you, Your Honor. I just have four points that I would like to make. The first is this issue about whether law includes decisional law of the Supreme Court interpreting a statute. I'd first like to say that the Supreme Court in Warren v. United States, that's 340 U.S. 523, has said that the term law in our jurisprudence usually includes the rules of court decisions as well as legislative acts. It cites actually Erie Railroad v. Tompkins for that proposition, which is interpreting the Decision Act, another statute in Title 28. Also, Illinois v. Milwaukee, which is a 1972 decision of the Supreme Court, interprets the word law in 1331 to also include decisional law. So there are many cases that follow that. What's the site? The site for that, Illinois v. Milwaukee, is 406 U.S. 91. It's a 1972 decision of the Supreme Court construing laws following this general canon of statutory construction, which is articulated in the Warren case that says, yes, law usually includes decisional law as well as statutes. So I think that's the first point that I wanted to cover that was, I think, part of the colloquy here. The second point I wanted to make is that V.E. Holdings, one of the arguments that just was not made in V.E. Holdings was the relationship between 1400b and 1694. Originally, those two sections were part of the same statute and they got split in the codification of the judicial code in 1948. 1948 was a significant date, as my colleagues on the other side said, but it was only because that's when Title 28 was enacted into positive law. That usually does not have any substantive effect. They were originally part of the same sentence. You can see that by reading the Stonite case and the court in Stonite. Because they were part of the same statute, they should be interpreted in pare materia. 1694 uses the word residence, and there's never been an argument that that has been changed by Congress, the concept of residence in 1694, which is the service of process provision, and allows for nationwide service of process if there's acts of infringement within that district. And so those two, I think, this argument was simply, we've gotten the briefs from V.E. Holdings and it simply was never made in V.E. Holdings. So there's certain arguments that never were before the court in V.E. Holdings. The third point I'd like to say, and this is maybe just reiterating, V.E. Holdings itself did not impose a sort of... If there's certain arguments that weren't before the court in V.E. Holdings, that doesn't give us the freedom to overrule a statutory interpretation in V.E. Holdings. At most, I just want to make sure I'm understanding, at most it is fodder for a potential in-bank, right? It is that, but it also is quite clear that V.E. Holding no longer is the law because the statutory language has been repealed by Congress. But that's not what you just said. The point I'm trying to understand, the point you made as your number two point, which is there was an argument that wasn't made in V.E. Holdings. That's true. Okay. And it is true that we definitely want to maintain the opportunity to perhaps present an en banc petition to the court, although the language and the reasoning of V.E. Holdings is very much tied to language and a statute that doesn't exist, hasn't existed for five years. Okay, so what are three and four? I don't want to miss... Three and four. Three and four is just the V.E. Holdings did not impose a requirement that the party seeking change in the venue's laws prove a clear intention on the part of Congress or show some acknowledgement by Congress that is making a dramatic change. And I would submit that we should be held to the same standard. In other words, we do not need to have any kind of clear legislative history to prove that Congress meant what it said in the 2011 Act. Finally, I would say with respect to the failed bills that have occurred in Congress, the proposals. I don't think there's any problem that in terms of Congress meant what it said. I think I think that your most difficult problem is that when it said, except as otherwise provided by law, even if you're right about decisional law being incorporated, the decisional law didn't favor you at the time that this was adopted. Well, I think the Supreme Court law was at best on a different statute, something you keep stressing to me about V.E. Holding. So that can't clearly can't be the the dispositive decisional law that Congress was meaning to leave in place because it wasn't even on the words of these statutes, as you keep telling me. And then V.E. Holding is a federal circuit case. I don't, I just, my problem with your argument isn't the legal points that you're making necessarily. It's more like the facts, because I don't know what decisional law existed in 2011 that made it clear Congress meant to leave in place that state of the law that you're asking me for today. I think Forco interpreted Section 1400B to have this implicit definition. V.E. Holdings thought that that Congress had overridden that definition. Congress later repealed that language, and is then again the law. That, I think, is our... I still want to hear your fourth point, and then I have a question for you, so don't worry. So the fourth point is, I don't think just because of failed bills that Congress, that we should, that you should try to freeze the law, because the failed bills in this case, that often happens that there's a policy issue that comes up, or an issue that comes up, a legal issue. Congress might be considering legislating on it, but this court might also be considering reconsidering its own precedents, or in light of new legislative changes, considering what those legislative changes mean. And just because Congress is also considering something on Capitol Hill doesn't mean that this court is disabled from interpreting the new language in a new statute. Okay, my question is, I'd like you just to spend a minute, if you don't mind, you also raised a personal jurisdiction argument, and you haven't addressed it, so I'm not sure what I should take away from that. Why don't you spend a minute addressing it, or tell me maybe you're meaning to give it up? I don't know. No, we're definitely not meaning to give it up. It's actually part of the venue argument, because the venue statute, even if 1391c2 is read into 1400b, 1391c2 does require that there be personal jurisdiction over the action, I think. Yes, but if that argument is right, then there's no personal jurisdiction in any district if you're selling it, or are you suggesting that a patentee has to sue you in every single district separately for only the products you sell there? We are not suggesting that, because we actually think this is exactly why Congress wrote 1694. If you go back to the Stonite case, I think this is an old problem. In other words, we're trying to resolve a problem that Congress solved in the 1897 statute. The Congress saw this problem of venue, and it dealt with it together in one section. It's now split into two things, and it has a service of process provision, and then you're not dependent upon the long-arm statute of Delaware, because then- What does this have to do with personal jurisdiction? I'm missing your connection. Oh, because personal jurisdiction under the Federal Rules of Civil Procedure is established under Federal Rules of Civil Procedure 4k, and it can either be established under 4k1, which is using the Delaware long-arm statute. That is how the respondents in this case use established personal jurisdiction, or it can be established under a Federal statute, and then the minimum context is not to Delaware. It's to the United States, and that's 4k3. That is what would apply if 1694 were to be used. In other words, Congress has already dealt with this situation that if there is infringement, and there certainly are hypotheticals you could imagine where the infringement or products come to a district where there are no minimum context. That's exactly what Congress wanted to do in the 1897 statute that's now split into two pieces. That's why they should be read in pari materia. That's why the Supreme Court's decision in 4k0 makes sense. It makes sense because Congress dealt with this whole problem as an integrated whole. But going back to personal jurisdiction, because that was my question, I don't understand, where is their personal jurisdiction? If I understand it right, your complaint was only two percent of your sales go to Delaware, and I assume all the rest of your sales are divided among all of the states in the country, most likely. Roughly speaking, yes. So if your complaint is there's no personal jurisdiction over you in Delaware because only two percent of your sales go there. There happen to be roughly 50 states. I mean, I don't understand. I mean, where is their personal jurisdiction over you? Are you saying there's only personal jurisdiction over you for the two percent of the sales that go to Delaware, or there's no personal jurisdiction over you at all in Delaware? Or are you saying that they drink a lot of water in Texas? Well, I'm not sure about that. I'm not saying that. I'm not saying about the water that they drink in Texas. Are you asking us to move your case from Delaware to Texas? I didn't understand. No, our change of venue is to the Southern District of Indiana is the change of venue statute, the change of venue motion that is before the court. I would say that we're saying that we don't think that there's jurisdiction with respect to the two percent because we don't think that we purposely availed ourselves of anything about Delaware. The most we did was ship products there. Sell 600,000 bottles of water in Delaware. We ship them there. Isn't that right, 600,000? Don't I have the number somewhat right? It's... we certainly sold... Is it a million? I mean, what am I missing? It is... we didn't sell it to Delaware. We delivered it to Delaware on a contract with a client that is outside of Delaware who instructed our shipping. That's not really your argument. Your argument boiled down to only two percent go to Delaware. That's the way... Only two percent go to Delaware, so there can't be jurisdiction. There certainly can't be... What if two percent go to each of the 50 states? Does that mean there's no personal jurisdiction over you anywhere? Well, there... well, there would be, obviously, if we use the traditional framework that Congress established because all we would need is that the defendant... the plaintiff would simply have to find a district in which we've committed acts of infringement and we have a regular and established place of business. And for somebody who's engaged in nationwide distribution, there might be other districts that they are amenable to sue. And once they're amenable there... Like if you were McDonald's. What? I could sue you in any district, right? Under that logic. I don't know McDonald's corporate structure. I think they use a franchising method. So let's take... maybe Starbucks, maybe? Can we take Starbucks? Okay, good. Starbucks. Because Starbucks, I think, owns their stores. So that's a regular and established place of business, I think. And if they are committing acts of infringement there, then yes, you can sue them in each and every district that they have a Starbucks... Or in only one of those districts and sue them on the basis of all of the infringement committed in all the districts. That is right. Because then you'd be using 1694. You would not use the state long-arm statute to serve process. You would use the federal statute, which is 1694. And then you would be able to serve process across the entire United States. And the jurisdictional... The due process analysis would be a federal due process analysis, not limited by that particular state's long-term... And one last question. Do you think this is something we can do as a panel? Or do you think in light of prior precedent of this court, it would have to be done by the in-bank court? I definitely think you can do it as a panel, because this is new statutory language that has never been interpreted by this court. Personal jurisdiction? Oh, personal jurisdiction. Oh, the personal jurisdiction point. I do think that you can do it as a panel, because our case is distinguished from the Beverly Hills Fan case. And also, there have been intervening Supreme Court decisions. There's been a quartet of Supreme Court decisions on personal jurisdiction, and at least two that deal specifically with specific jurisdiction, which is what is at issue in this case. And those tests are more restrictive. Those didn't exist at the time of the panel decision in Beverly Hills Fan. So we're not only distinguishable from Beverly Hills Fan, but there's also been intervening developments in the law of personal jurisdiction. If there are no further questions, thank you very much, Your Honor. I thank both counsel for their argument. The case is taken under submission. All rise. The honorable court is adjourned for today.